Filed 10/22/21  P. v. Salone CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076373 |
| v. | (Super.Ct.No. RIF1202138) |
| HAKIM RASHAD SALONE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson, Deputy Attorney General, for Plaintiff and Respondent.

1

In 2012, Hakim Rashad Salone pled guilty to attempted second degree robbery and second degree robbery and was sentenced to 24 years in prison. In 2020, the California Department of Corrections and Rehabilitation (CDCR) recommended recalling and reducing his sentence based on his exemplary behavior while in prison. (Pen. Code, § 1170, subd. (d).) The trial court declined the CDCR's recommendation. On appeal, Salone argues this was an abuse of discretion. We conclude the court's decision not to recall his sentence was reasonable and affirm.

I

FACTS

On April 13, 2012, Salone and a codefendant entered a jewelry store armed with handguns. One of the employees was able to trip the silent alarm, and another eventually wrestled control of a handgun from Salone. Police arrived while the robbery was in progress, and after 40 minutes Salone exited the store where police arrested him.

The Riverside County District Attorney charged Salone with kidnapping (Pen. Code, § 209, unlabeled statutory citations refer to this code), two counts of attempted robbery (§§ 664/211), and possession of a firearm by a felon (§ 29800) in connection with the April 13 attempted robbery. In addition, they charged him with one count of robbery for an incident which occurred on March 15, 2012. The complaint also alleged Salone personally used a gun in the commission of each of these crimes (§ 12022.53, subd. (b)), and that he had one prior serious felony conviction (§ 667, subd. (a)(1)) which

2

was also a prior strike conviction (§§ 667, subds. (c) & (e)(1); 1170.12, subd. (c)(1)) and two prior prison convictions (§ 667.5, subd. (b)).

Salone pled guilty to attempted second degree robbery and second degree robbery, and admitted the enhancements for firearm use, prior strike, prior serious felony, and one prison prior. Following the terms of the plea agreement, the trial court sentenced him to 24 years in prison, composed of three years for the attempted robbery (doubled to six due to the prior strike), 10 years for the firearm enhancement, two years for the robbery conviction (one third the midterm of three years, doubled), five years for the prior serious felony enhancement, and one year for the prison prior enhancement.

In February 2020, the Secretary of the CDCR sent the trial court a letter recommending it recall Salone's sentence in accordance with section 1170, subdivision (d). The prosecution opposed the recommendation, arguing Salone's crime was extremely serious and premeditated, that he didn't show progress addressing the underlying issues which led to the offense, and that he received the benefit of his bargained for sentence.

The trial court held a hearing on the recommendation on December 10, 2020, and declined to recall the sentence. Salone timely appealed.

II

ANALYSIS

Section 1170, subdivision (d)(1), authorizes the court, "at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of state

3

prison inmates . . . [to] recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence." (§ 1170, subd. (d)(1).) "This provision thus creates 'an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun.' " (*People v. Frazier* (2020) 55 Cal.App.5th 858, 863.)

"We review the trial court's decision whether to recall a defendant's sentence for an abuse of discretion." (*People v. McCallum* (2020) 55 Cal.App.5th 202, 211 (*McCallum*).) " ' "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' " [Citation.] The abuse of discretion standard "involves abundant deference" to the court's ruling.' " (*Ibid.*, italics omitted.)

In exercising this discretion, "the trial court may exercise its authority 'for any reason rationally related to lawful sentencing.' " (*McCallum*, *supra*, 55 Cal.App.5th at p. 210). It may also "consider 'postconviction factors, including, but not limited to, the inmate's disciplinary record and record of rehabilitation while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the inmate's risk for future violence, and evidence that reflects that

4

circumstances have changed since the inmate's original sentencing so that the inmate's continued incarceration is no longer in the interest of justice.' " (*Ibid.*)

Salone argues the trial judge erred by declining to recall his sentence because he mistakenly believed he didn't have discretion to modify a negotiated disposition. He also argues the judge's decision was an abuse of discretion because he didn't consider all relevant factors, most notably whether Salone's continued incarceration was in the interest of justice, particularly where certain terms imposed due to enhancements are now discretionary or outright prohibited.

Both of these arguments lack merit. First, the record doesn't indicate the judge misunderstood his discretion, or believed he was prohibited from modifying a negotiated sentence. The judge's only comment to this effect was that he believed that "on balance, [Salone] is receiving the full benefit of his negotiated disposition." This is not a statement indicating the judge felt he *couldn't* modify a negotiated disposition, merely that he *wouldn't* in this case.

Second, the record indicates the judge considered multiple relevant factors— including whether continued incarceration served the interests of justice given the changes in the law—and simply decided against Salone. The judge explicitly stated that he was "doing nothing with respect to the [section] 667.5[, subdivision (b)] [enhancement,]" and acknowledged "[i]f I were to resentence him, I would be obliged at the time of sentencing to apply the facts," with the knowledge that enhancements under section 667.5, subdivision (b) have been eliminated. Thus, the court explicitly considered

5

the change in the law, acknowledged he would be obligated to apply it if he recalled the sentence, and decided not to recall the sentence anyway. Far from a failure to consider the changed law, this indicates the judge's decision was based on his understanding of the changes. That is, the court implicitly concluded that Salone shouldn't receive the ameliorative benefits of the changes in the law.

The judge was also explicit about his reasons why Salone shouldn't receive any relief. He said Salone's crime was "extraordinarily violent," that it involved an armed invasion with Salone "put[ting] the gun to someone's head, and t[elling] them that that person might die if things did not go well." Moreover, "[e]ven after the victims were able to make it out of the jewelry store, [Salone] spent some 40 minutes in the store after police arrived refusing to come back out." In short "[t]his was about as aggravated as an attempt[ed] robbery could possibly be."

In contrast, the judge acknowledged Salone "has done a very good job," "completed his GED and [] has started on college," and "also attended NA and AA." However, the judge felt there was "nothing else that is extraordinary about his prison record," like in other cases "where people have done extraordinary things to convince the Court that they have . . . become rehabilitated." Therefore, though the judge "applaud[ed] [Salone's] efforts," he felt they were not sufficient to demonstrate Salone was rehabilitated to a degree that would warrant recall and resentencing.

In other words, the court considered several of the factors contemplated by section 1170, subdivision (d), but concluded they did not weigh in Salone's favor given

6

his record. Even if we were to disagree with this assessment, we would not be able to say it was arbitrary or irrational.

Because we conclude the trial court did not abuse its discretion in declining to resentence Salone, we do not address the People's argument that section 1170, subdivision (d), does not permit a trial court to modify a sentence entered after a negotiated plea.

## III

## DISPOSITION

We affirm.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

McKINSTER
Acting P. J.

MENETREZ
J.

7